82 So.2d 562

**H. L. JOHNSON (H. L. Johnson Lumber Company)**

v.

**Roy A. COX.**

**6 Div. 754.**

Court of Appeals of Alabama.

June 30, 1955.

Rehearing Denied Aug. 9, 1955.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellant.

Taylor, Higgins, Windham & Perdue and Wade H. Morton, Birmingham, for appellee.

PRICE, Judge.

This proceeding is certiorari by the employer to review the finding of facts and judgment by the trial court awarding compensation to the employee under the Workmen's Compensation Act. Title 26, Section 253 et seq., Code 1940 as amended.

Roy A. Cox, plaintiff below and appellee here, was struck about the face, cheek, eye and nose with a flying piece of timber on December 31, 1951, while he was engaged as a laborer in petitioner's sawmill, sustaining a broken cheek bone and severe lacerations about his face, cheek, eye and nose.

The court found that at the time of the accident appellee's average weekly earnings were $30 per week. Petitioner had actual knowledge of the accident and paid compensation to appellee at the rate of $19.50 per week for a period of 9 weeks while appellee was temporarily totally disabled to perform the duties of his employment. Petitioner also paid or caused to be paid for the benefit of appellee hospital and medical expenses in excess of $500.

The finding of the court is: "That as a result of the aforesaid accident, the plaintiff sustained permanent disfigurement about his face, cheek and nose, materially affecting his employability in the employment in which he was injured, or other employment for which he was qualified, and is entitled to compensation for such permanent disfigurement in excess of the aforesaid benefits; that plaintiff is not entitled to additional medical care, aid and attention incurred in connection with his treatment as a result of said accident; nor for future treatment of his face, cheek, eye and nose."

In accordance with this finding, the court awarded appellee for his permanent disfigurement the amount of Eight Hundred ninety-seven (897.00) Dollars, to be paid at the rate of $19.50 per week for a period of 46 weeks in addition to the nine weeks theretofore paid by petitioner to appellee for temporary total disability.

Section 279(A), Title 26, Code, provides compensation for temporary disability and stipulates that, "This compensation shall be paid during the time of such disability, not, however, beyond three hundred weeks."

Section 279(C) 1 of said title, after prescribing fixed and definite periods of compensation for the loss of certain physical members and functions, provides:

"For the serious disfigurement, not resulting from the loss of a member or other injury specifically compensated, materially affecting the employability of the injured person in the employment in which he was injured or other employment for which he is then qualified, fifty-five percent of the average weekly earnings for such period as the court may determine, not exceeding one hundred weeks."

It is petitioner's contention that appellee, having received compensation under Section 279(A), Code, supra, for temporary total disability, is precluded from receiving any further compensation under Section 279(C) 1, Code, supra, for serious disfigurement. He urges that Section 279(C) 1 provides compensation for serious disfigurement "not resulting from the loss of a member or other injury specifically compensated," and that payment for temporary total disability "specifically compensated" appellee for the injury within the meaning of the statute.

The question then is whether appellee, having received compensation for temporary total disability, is precluded from a recovery of compensation for disfigurement resulting from the same injury? It is our opinion that he is not precluded from a recovery for the disfigurement.

Our courts have always construed the Workmen's Compensation Act as allowing a claimant to recover compensation for a permanent injury although he has already received compensation for temporary incapacity because of the same injury. Ex parte Diniaco, 207 Ala. 685, 93 So. 388; Galloway Coal Co. v. Stanford, 215 Ala. 79, 109 So. 377; Nolan v. Ernest Const. Co., 243 Ala. 460, 10 So.2d 547; Morris v. Dickson, 252 Ala. 588, 42 So.2d 337. Our research has unearthed no decision of the courts of this State upon the question here raised, however there is no reason to believe that it was intended that a permanently disfigured claimant should be placed in

a worse position than one suffering any of the other permanent injuries specifically compensated by Section 279(C). In 71 C.J., Section 518, page 795, the statement is made that an award can be made for disfigurement where an award has been made for temporary total disability, citing several Oklahoma decisions.

The cases cited by petitioner in support of his contention are Sheldon v. Gopher Granite Co., 174 Minn. 551, 219 N.W. 867, and Smith-Lohr Coal Mining Co. v. Industrial Commission, 291 Ill. 355, 126 N.E. 164. In the Minnesota case, supra, the claimant was denied compensation for disfigurement resulting from the loss of part of a thumb where the same injury was specifically compensated by the permanent partial disability schedule. In the Illinois case, supra, the claimant suffered a single injury which was compensated for by awards for temporary total disability and permanent partial incapacity. The court held that claimant was not entitled to further compensation for disfigurement resulting from the same injury, basing its decision on a construction of the disfigurement paragraph to the effect that compensation for disfigurement is not payable where compensation for the same injury is payable under further paragraphs providing for permanent disabilities.

Insistence is made that there is no finding made by the trial court in the statement of law and facts and conclusions "which complies with the statutory provision that the compensation can be awarded only in cases of serious disfigurement not resulting from the loss of a member or other injury specifically compensated."

In Bass v. Cowikee Mills, 257 Ala. 280, 58 So.2d 589, the court said: "It is established as shown by Ex parte Shaw, 210 Ala. 185, 97 So. 694, that where the finding of fact is meager or omissive the court will look to the evidence in the case to see if on any reasonable view of the evidence, the judgment of the court can be sustained."

The evidence here clearly shows that the disfigurement did not result from the loss of a member or other injury specifically compensated, moreover, the court further stated in Bass v. Cowikee Mills, supra: "It

can be added here that if any party has objection to the findings of fact on the grounds of its insufficiency, it may be presented to the trial court for correction. Shaw v. Knight, 212 Ala. 356, 102 So. 701", which was not done in this case.

We are unable to agree with the contention of counsel for the petitioner that there is a total absence of evidence in the record to support the trial court's conclusion that claimant's disfigurement was of a type "materially affecting the employability of the injured person in the employment in which he was injured or other employment for which he was then qualified." Although petitioner contends there is no evidence to support the finding, his argument is directed to a discussion of the weight of the evidence. In this connection, Justice Lawson made this observation in Black v. Alabama Dry Dock & Shipbuilding Co., 249 Ala. 209, 30 So.2d 456, 459:

"Much of appellant's argument is directed to a discussion of the weight of the evidence. The case is not here triable de novo on the evidence incorporated in the record, nor reviewable even as are findings of a judge sitting without a jury in ordinary trials at law or in equity upon testimony of witnesses examined before the court. The proceeding here is by certiorari, in which the evidence is permitted as a part of the record, not for the purpose of passing upon the weight of the evidence, but in cases like the present, to determine whether there is any evidence supporting the findings of the trial judge. If the evidence, or the reasonable inferences therefrom, tends to support the findings of the trial judge, the judgment is final and conclusive. Houser v. Young, 247 Ala. 562, 25 So.2d 421; Shell Petroleum Corp. v. Lucas, 232 Ala. 654, 169 So. 291."

Dr. W. E. Moody testified he had examined claimant and found him to have "a scar on his left cheek extending from the left side of his nose upward and outward to his ear about two inches in length; that part of his left nostril is missing." It was Dr. Moody's opinion that claimant's nose and cheek were permanently disfigured.

Claimant's testimony established that he had worked both as a laborer and as a clerk, where he necessarily came in contact with the public.

Mr. Ray Mullins testified that he was Director of Personnel for Jefferson County and the City of Birmingham; that he had been regularly employed in personnel work since 1935. This witness observed claimant's disfigurement, and stated: "I would say that if he was seeking employment in any class of work where his success on the job depended on his making a good impression on people with whom he deals or influencing people and winning friends, so to speak, it would have some bearing in employment for trade. For example, skilled or unskilled labor in our department, we wouldn't give it any consideration so far as eligibility or his ability as an employee."

"Q. Mr. Mullins, based on your experience and your observation of this scar and disfigurement, is it your judgment and opinion that the scar and disfigurement would be a handicap to Mr. Cox if he was going to a store and wanted to get a job as a clerk in a store?"

\* \* \* \* \* \*

"A. I think—yes, I think it would be against the possibility of his getting employment. I wouldn't say that he would be incapable, but I would not say under no circumstances could he get employment like that, but if there were other possible applicants available, the employment manager would likely choose someone who didn't have such a disfigurement."

Mr. Donald W. Mewbourne testified that he was a labor supervisor for the Tennessee Coal, Iron and Railroad Company; that he had been employed in that capacity for twelve years. He was asked this question:

"Q. Mr. Mewbourne, in your judgment and opinion, based on your experience in employing common labor, does the scar or would the scar and disfigurement to Mr. Cox's face make him less employable as a common laborer?"

\* \* \* \* \* \*

"A. Yes."

This evidence clearly supports the finding by the trial court that claimant's disfigurement was of a type "materially affecting his employability in the employment in which he was injured, or other employment for which he was qualified."

The judgment is affirmed.

Affirmed.