(No. 3834— )

CATO CASEY, Claimant, *vs.* STATE OF ILLINOIS,. Respondent.

*Opinion filed March 19, 1946.*

MAURICE E. GOSNELL AND NOAH M. TOHILL, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

FISHER, C. J.

This claim was filed on February 17, 1944 and the record of the case completed and claimant observed by the Court on January 9, 1946.

On July 24, 1942 claimant, Cato Casey, was employed by the Division of Highways, State of Illinois, as the driver of a truck being used in repair work on S. B. I. Route 12 (U. S. Route 50) about six miles west of Lawrenceville, in Lawrence County, Illinois. When another employee attempted to refuel the tank of an auxiliary motor mounted on the truck, with gasoline from a five gallon can, the gasoline ignited and the container was dropped, spilling the flaming gasoline over Casey. He

suffered severe burns to his face, head, neck, chest, shoulders, arms, hands, thighs and legs.

The respondent paid all medical and hospital expenses amounting to $984.19 and compensation totaling $823.12 for total temporary disability, at the rate of $19.80 per week from July 25,1942 to May 11, 1943, which was the day after his release by Dr H. B. Thomas, his last attending physician. No claim is made for medical or surgical services or for temporary total disability.

This claim filed February 17, 1944 seeks an award for the permanent partial loss of use of the right arm, both legs, right eye, hearing of both ears and for serious and permanent disfigurement of the head, face and hands.

At the time of the accident claimant and respondent were operating under the provisions of the Workmen's Compensation Act, and the accident arose out of and in the course of the employment. No jurisdictional questions are involved.

The record consists of the Complaint, Departmental Report, Transcript of Claimant's Evidence, Transcript of Additional Evidence of Claimant, Abstract of Evidence, and Statement, Brief and Argument of Claimant.

Claimant was not in the employment of the State for a full year preceding the accident. He was employed by the Division of Highways on May 27, 1942 and thereafter worked regularly in various capacities to July 24, 1942, the date of his injury. On that day he was working as a truck driver, at a wage rate of 80c an hour, and the Division in its report states that employees engaged in the same capacity in which claimant was engaged at the time of his accident, worked less than 200 days a year and that 8 hours constituted a normal working day.

As required by Section 10 of the Workmen's Compensation Act, the daily wage of $6.40 multiplied by 200

would make his annual earnings $1,280.00. Divide by 52 his average weekly wage would be $24.62. Increaseing the award 5% for each of his three children under 16 years and another 10% as required by Section 8 (j) and (1) establishes a weekly compensation rate of $17.60. Claimant seeks an increase of 5% for each of four children under 16 years of age. The youngest child was born after the time of the injury and hence cannot be considered under Section 8 (j).

The testimony with respect to claimant's injuries is as follows:

Dr. W. I. Green on behalf of the claiment testified that he examined claimant on June 12, 1944 and found dense keloid formation scars, 7 by 8 inches over the right shoulder region, extending over the outer surface of the right arm and one 4 by 8 inches over the left shoulder; another covering the lower third of the right forearm, the right hand and fingers; a long cicatrical band at the right elbow; scarring of both sides of the face resulting in loss of two-thirds of the right external ear and about one-half of the left ear; scarring of the forehead and skin about the eyes, the neck, upper one-third of the chest, left thigh and leg and inner surface of the right knee. He further testified that the extension of the right arm was limited to about 25 degrees; that Casey showed a diminution in hearing of about 40%; that there was a chronic conjunctivitis of the eyes which could have resulted from burns and scars, that it appeared the eyeball had been burnt but had now healed and no scar tissue could be detected.

Dr. V. M. Brian, who also examined Casey on June 12, 1944, testified as to the scars and that he also found a one-fourth loss of normal function in extending the

right arm and that he thought claimant had lost fifty per cent of his hearing.

Dr. H. Nolan Fisher, who treated Casey's eyelids, reported to the Division of Highways on January 9, 1943, "there was no direct injury to the eyeball." Dr H. B. Thomas of the university of Illinois Medical College reported on March 19, 1943 that claimant had 25% disability of the right elbow and 15% of the right knee, and also reported on May 10, 1943 that claimant was improving in the affected areas and that he should be given light work, and although further improvement should be expected the prognosis was poor. Claimant was dismissed on this date, but did not return to the Division of Highways.

The claimant testified he is unable to extend his right arm completely and that he is not able to move his left leg as he could before the burns; that his knees give way after four or five hours of work; that his scars cause him discomfort, particularly in damp, cold weather; that his right eye aches and before the injury his eyes were all right. His physical condition prior to the accident was good; he worked eight to nine hours a day and never tired, but now after working for four hours he has to stop and rest and cannot work all day. He operates an auto repair shop in Pinkstaff, but makes very little money, because he is not able to do a full day's work. He cannot stand on his feet for more than a few minutes and has to change position because of pain.

A. C. Stoltz, a former employer of claimant, who had known him for over twenty years, testified that up to the time of his injury claimant was a strong, able-bodied man, able to do more than an average day's work. After the accident Mr. Stoltz had attempted to re-employ claimant and pay him $1.00 an hour, but claimant would work only four or five hours, whereupon, claimant in-

formed the witness he did not care to work under these conditions and would prefer to work in his own shop where he could rest at intervals. He had observed claimant and knows that he does not have the use of his arm and that he is handicapped with his leg.

No evidence was introduced as to the amount of claimant's earnings from his present repair shop.

The Court observed the claimant in order to reach a fair estimate of the actual extent of his disfigurement and disability.

It is not possible to determine from the record what loss of vision claimant may have, and the proof is wholly inadequate to sustain any award for partial loss of vision.

Claimant does not contend, nor does the evidence show, that he has sustained a total and permanent loss of hearing in either one or both ears. Under Section 8 (e), sub-paragraph 16½ (by amendment effective July 1, 1929) compensation cannot be awarded for permanent partial loss of hearing. The loss of hearing must be total and permanent in either one or both ears, as a result of accidental injury arising out of and in the course of employment before compensation can be awarded.

From the record and our observation of claimant he is shown to have sustained a permanent partial loss of 25% of the use of his right arm, and serious and permanent disfigurement to his head, face and neck.

Claimant contends there has been a 25% loss of the use of both legs, although the medical testimony does not indicate any definite degree of loss of use. The testimony does show restrictions in the normal functions of the legs and that claimant will be incapacitated in performing his routine duties.

Therefore, it would appear to the Court that a reasonable conclusion would be that claimant has been

permanently injured to the extent of 15% of the use of both legs and that he is entitled to an award for such permanent partial loss of use.

For the serious and permanent disfigurement to claimant's head, face and neck, he is entitled to compensation under Section 8 (c) in the sum of $880.00 at the rate of $17.60 for 50 weeks.

> *The Wells Brothers Co.* v. *Industrial Commission, et al,* 285 Ill. 647.
>
> *Smith-Lohr Coal Co.* v. *Industrial Commission,* 291 Ill. 355.
>
> *International Coal Co.* v. *Industrial Commission,* 293 Ill. 524.
>
> *Chicago Home* v. *Industrial Commission,* 297 Ill. 286.

For the permanent partial loss of 25% of the use of his right arm, claimant is entitled to $990.00, computed at $17.60 for 56¼ weeks (permanent and complete loss being compensable at 50% of the average weekly wage for 225 weeks).

For the permanent partial loss of 15% of the use of his right leg, claimant is entitled to $501.60, computed at $17.60 for 28½ weeks (permanent and complete loss being compensable at 50% of the average weekly wage for 190 weeks).

For the permanent partial loss of the use of his left leg, claimant is entitled to $501.60, at the rate of $17.60 for 28½ weeks.

The total of the above awards is $2,873.20. The record shows that claimant was paid $823.12, at the rate of $19.80 for 41 4/7 weeks, whereas, his average weekly rate should have been computed at $17.60, or a total of $731.66 for 41 4/7 weeks. This represents an overpay-

ment to claimant of $91.46, which must be deducted from his award, leaving a balance now due claimant of $2,781.74.

An award is therefore entered in favor of claimant, Cato Casey, in the sum of $2,781.74, all of which is accrued and is payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."